All right, the first case on the calendar is Farid Shahrivar v. City of San Jose. And Mr. Shahrivar, you're appearing in pro per. We've denied your motion as to certain documents, but you may now proceed. Thank you. Good morning. Good morning. Good morning. I wanted to say – Would you kindly take – stop the clock. Please take the microphone closer to you and speak up loudly so that we can hear you. All right? All right. Now you may start. There were a few notes about the last filing I did with the opposition that was denied. You'll have to speak up loud. I can't hear you. The last things that I filed, the letter with the diagrams, there were a few notes about those. I know it was denied. Mr. Shahrivar, we've denied your motion to supplement your aides in the argument. If you want to talk about your case, now is the time to talk about the case, not about the documents which we have denied your use. That's fine. There were just some things said that were not correct and accurate about what I had submitted. So I just wanted to clarify that. With your permission, I wanted to make a statement as what I've experienced through these years, tumultuous years that I went through. And then I just want to try to answer questions you have because I know when you read the complaint, there may be some things that are not connected. I'm having a hard time understanding you. Yes, with your permission, I'm going to say something. Go ahead. And then I want to just try to answer questions the best I can. I'm not an attorney, but I'll do my best. I wanted to say that this case is retaliation. It's civil rights. And the civil rights, the seeds of, you know, the laws that are pertaining to this case, were planted after the Civil War and during the Civil Rights Movement in 1964. And blood was spilled. There were casualties. We lost Dr. Martin Luther King. And it stands as a hallmark in the history of U.S. legislature. It's something. Let me ask you, see if I can concentrate your mind on this. You have a retaliation claim. I will get to that, yes. Now, tell me, what action did you take that you claim was the basis of the defendants retaliating against you? And what action do you claim consisted of the retaliation? And then you can tell us where in your complaint that those actions or those facts are pleaded. I appreciate that. I was going to make a statement I didn't finish, if you don't want me to go on. I just wanted to say whistleblowers are your eyes and ears, and also of society, when it comes to civil law. You tend to swallow what you say, and I can't hear you. I'm saying whistleblowers are your eyes and ears. Are you claiming that you are a whistleblower? Yes. What fact did you whistleblow? It's in the brief. When I went to my director of public works, I asked her that I cannot, I cannot, I'm having problems in the division that I'm in. Please transfer me out, and then I told her what I can do. And she questioned me why, and then I divulged to her that Middle Easterners, Iranians, they've been discriminated against. She had told me, give me examples, and I gave her examples. Not all this detail is there, but it's stated there, and I can go and point you to what it is. That was the start. And when I told her about that, there was a deputy director, and he shook his head. He understood, yeah, a double standard. That was the start. So your claim is that you complained to some superior officer, your director of public works. And you said that you had been pressured to overlook some building violations. No, that's not accurate. What I told her was Iranian Americans and Middle Easterners in the division are being treated badly, and I cannot withstand what I'm seeing and going through with my supervisors. So you made a claim of racial discrimination to your... Yes. All right. When did you do that? It was in, I think, August 3rd of 2005. It's in the record. I can tell you exactly what page. So that is the protected action against which you were retaliated. That was the first. I did many other reportings, protective activities. And what action was taken against you for complaining about racial discrimination as to Iranian Americans? Would you repeat the question? What action do you claim was taken against you in retaliation for your complaint regarding racial discrimination? Yes, right after that, I asked not to divulge the information to my division manager because I was afraid. I told her that it's affecting my health. And what happened was they, I got a letter from her that, and I asked her, would you permit me to leave. And she wrote back in a letter that I have discussed this with your superior. She referred me to Katie Jensen. This was the person I was complaining about. And I knew that's bad news. Then I learned later they had started an unfounded sexual harassment investigation. So you're complaining that after making this charge, they filed an action against you for sexual harassment? They didn't file. Basically, and Susan Lacy and the superiors I complained about, they had said something and they never divulged to me exactly who said what. And this took a very long time. And my assignments changed. And I was given more and more things. And this supervisor, we had to go through one-on-one meetings. And we were taken to a room that had glass, everyone could see. And when you sit there and someone's questioning, everyone knows there's a problem with that employee. And that went every week. And this supervisor had about 10, 11 people. Nobody did something like this with others. Only if they had a deputy and the group was big, they had one-on-one meetings. And only we had to go through. A Lebanese guy and two Iranian Americans. So I was given more and more to do. And I was given, I was asked questions during the one-on-one meetings. I would get odd demands that you have to give me a detailed plan what you're going to be doing this whole week. And nobody had to do that. And I have it in writing. I don't remember half hour exactly what you're doing. And of course, the job I had, you don't know what you're going to run into. I was basically acting as the structural engineering reviewer for all the public libraries that were built during the years I was working in the division, which then changed the name to CFAS. Now, this is just one thing that started. And I had asked for an outside work permit. They wouldn't answer me. And week after week, oh, we'll answer you next week, we'll answer you next week. And there were two things. I had invested with a company, the chief scientist was the author of the HIPAA regulations, and we were developing software. I was board of director, one of the members who invested, and I was on the board. I asked for three hours a week, and they wouldn't answer me, and I couldn't do that. So my outside work permit was denied. In front of the group one day, Rodney Rapson insulted me. There was a discussion going on, and when there's open statements, he talked down to me. I wrote him an email, a polite email, this is what happened, and I showed it to all the colleagues, is this accurate, and they said no, that's what happened. Mr. Shavivar, you're out of time. Thank you very much. Appellee? I have not stated in the record, you can see the filings. Pardon me, Mr. Shavivar, you've taken up your time, and more so. I would like to first summarize why this complaint, the sixth amended complaint, fails to state a plausible claim. First, the 1981 and 1983 claims against the city fails to state causation, because allegations of policy practice or customs. Pardon me, I'm having difficulty understanding you. Perhaps you could go a little bit slower or speak more directly into the microphone. Thank you, Your Honor. Your claim is that the 1981 retaliation claim fails to allege causation? Yes, that's correct, Your Honor. In what element of causation does it fail? In two respects, Your Honor, as to the liability alleged against the city. There are conclusory allegations of policy practice or custom, and allegations of acts by final policy makers are insufficient. I didn't hear the last thing, ma'am, that you said, are what? The allegation of acts by final policy makers are insufficient. These are the two ways that you can allege causation against the municipality. Excuse me, counsel. I have some pretty specific questions, and there are quite a number of claims that I'm not sure you need to address. But could I call your attention to, I'd like a little help on the 1981 claim against the individuals, and specifically against Allen, Sykes, and Sow? Why does the 1981 claim fail against Allen, Sykes, and Sow, the retaliation claim? That's my question. I didn't get the last name, Your Honor. Allen, Sykes, and who? Yes, Your Honor, there are a lot of allegations against those three and the others. But the factual allegations are conclusory, and often there are large periods of time that are stated as to their actions. So there are also conclusory allegations of policy practice or custom. Okay, I'm not talking about the city, I'm not talking about Monell, to be clear, and I think the claims before May of 2006 are time barred. But after that period, as to these three, that's what I'm focusing on. Yes, Your Honor, thank you very much. For individual liability, there needs to be allegations of specific intent, and those are not there, or facts concerning each individual's knowledge as to his protected activities. And it's unclear from the complaint what the protected activities or his protected status was, actually, during these large swaths of time in the particular claims that he's making. Well, counsel, why is that? He filed an EEOC claim in June of 2006? Yes. Right? So why is his, if his claim is that as to that, that was a protected activity and there was retaliation after that period of time, why would that not survive? Is your argument that it's too, the allegations are too conclusory, or what is it exactly? Yes. Yes, Your Honor, they are, basically, the allegations are conclusory, the factual allegations needs to be specific. They are conclusory, and they are not plausible. There has to be enough facts to push him across, push the allegations across to the plausible side. There has to be a plausibility requirement, and there are not. So, forgive me, excuse me, right there, what's not plausible about this? Yes, Your Honor, the city's argument that he was a toxic employee, that he was not following directions, as is stated in his complaint and in the previous iterations of the complaint, there are statements there that city employees and supervisors were perceiving him as insubordinate. He yelled at his supervisors at least two or three times a month, so the actions that were taken against him, the letters of reprimand and the ultimate termination, were as a result of his failure to perform his job satisfactorily. Excuse me, excuse me, we have to take the allegations in the complaint as true at this point. Are you saying that the allegations about plaintiff yelling at the supervisors are contained in the complaint? Yes, Your Honor, they are. Can you tell me the paragraph? That would be helpful. Not in this particular sixth amended complaint, it's in the previous iteration of his complaint. Well, we're only looking at the current complaint. The operative complaint is the sixth amended complaint, and I don't think it's in there. Your Honor, I believe that you are allowed to look at previous iterations of his complaint, because these are judicial admissions. Whatever he says. As long as, I appreciate, if that's your response, then I appreciate your response, and I understand it, and I'll get out of your way with the rest of your argument. Thank you. You said that there was no allegation of knowledge by the individual defendants of the protected activities, which the claimant was saying, were the basis of retaliation. Are you saying that the individuals did not know that Mr. Chavivar had been involved and that he had filed an EEOC complaint in 2006? Is that what you're saying? Some of them did, Your Honor, but many of them did not. There are no allegations of that, because he alleges he sued 19 people. Please concentrate on my question. Yes. Is your claim that there was no allegation that Alan Sykes and Sau knew of the 2006 EEOC complaint, yes or no? I'm not sure if it's mentioned in the complaint that Sau did. I'm asking you for your position. Is that your position? That's correct, Your Honor. And where in the complaint is there a failure to allege that these three people knew about the protected activity? Anywhere, Your Honor. I mean, it's not he's not he's not specifically stating that. Okay, thanks. That's fine. Yes, Your Honor. Ma'am, on the failure to accommodate claim, is there any dispute that Mr. Chavivar had a disability within the law that is depression or that kind of condition? I don't believe there is any dispute as to his being suffering from depression because there are there are letters from his doctors in the record that he is suffering from that. Yes, yes. So is there any and so what about the allegations of a failure to accommodate him? He wanted to transfer work schedules part time. There does appear to be a list of things that were not given to him as an accommodation to his depression. And so how tell me about how the complaint fails to state a claim for failure to accommodate. Your Honor, he was accommodated by being transferred to the airport division where he did not have immediate interactions with his supervisors there. He is complaining that it wasn't retaliation, but in fact it was to accommodate him and he was told that it's a temporary assignment and that space in other departments if it's permitting, he would be accommodated. Plus the letters from his doctors only made recommendations. The three letters that are mentioned in the record only state that it's recommended, but it's not mandatory. So the city was working with him in order to accommodate him and that's basically reflected in the allegations. So but accepting the allegations of the complaint as true, as Judge Christian just mentioned, of course we have to. Does the complainant not allege, the plaintiff not allege that he just didn't get what he wanted, he asked for all these things, people wouldn't talk to him about them? Excuse me. Your Honor, you don't need to accept as true conclusory allegations.  All right. Thank you, Your Honor. The city requests the court to affirm the judgment. Thank you very much. All right. The case of Sharivar v. City of San Jose will be submitted and we'll go to the next case on the calendar, which is Maric v. Alvarado.
judges: Bea, Christen, McLaughlin